Case up, James Latiolais, but maybe it's not, v. Huntington-Ingalls, Mr. Barry. You're up, sir. Thank you, Chief Judge Stewart, and may it please the Court. Gregory Garr, on behalf of the defendant, Huntington-Ingalls. Your Honors, for three overriding reasons, we ask this Court to hold that the causal nexus test for establishing federal officer removal under 28 U.S.C. 1442A1 has been overridden by Congress' 2011 amendments to that provision. And I'm correct. You've waived any uninterrupted, right? I did, Your Honor.  First, the continued use of the moral nexus requirement is simply incompatible with the plain meaning of the or relating to language that Congress added in 2011. Second, plaintiff has offered this Court no coherent interpretation of the text of Section 1442A1 that would explain or account for his position that some civil actions or proceedings that meet the or – are removable under the or relating to language, but others are not. And third, giving effect to the plain meaning of the or relating to language that Congress added in 2011 would advance Congress' longstanding interests of ensuring that cases that implicate federal interests are removable to federal court, whereas here the defendant has at least a colorable federal defense. Now, our position on the statute is straightforward. Prior to 2011, when this Court initially developed its causal nexus test, the federal removal statute called for looking to a civil – whether the civil action is for, only for, any act under color of office. And this Court, as other circuits did, sensibly concluded that the use of for connoted a causation element that a defendant would have to meet in order to establish that a case was removable. Mr. Garr, what do you – one of the amici argues that the causation test historically, the Supreme Court derived that not from for, which you're focused on, but from the under color of office language in the statute. And so they therefore argue that the addition to for doesn't change the fixed prior meaning of under color of office. What's your response to that? So our response is to point you to Jefferson County v. Acker, page 431, where Justice Ginsburg discusses the causation element and specifically points to the for language in the pre-2011 act. And so I think that that establishes that the Supreme Court understood that the causation element, at least under the current statute, is tied to Congress' use of for, something that the Court's opinion actually underscores in that place of the opinion. And I think this Court is not bound by the Supreme Court's interpretation of an act that has been amended. Congress amended the act in 2011. So in your reading of the statute then, what work does the under color of office requirement do? Oh, I think it does a lot. I mean, the first thing you would look to is whether the action concerns an act under color of federal office. Here, I don't think there's any question that it concerns an act under color of federal office because the asbestos was installed on the naval vessels pursuant to a federal contractual objective. Now, if you look at one way you could illustrate that is Congress' amendment to the statute in 2012, where Congress amended the statute to make clear that an act by a law enforcement officer off duty was an act under color of federal office. Now, before Congress made that step, it wouldn't at all have been intuitive that an act that a federal officer took while he or she was off duty was an act under color of federal office. So I think that that part of the statute still does work. Congress simply made clear that after 2011, no longer had to show that it was simply for an act under color of federal office. It was sufficient to show that it was relating to an act under color of federal office. Last follow-up on that. Are you familiar with Judge Boggs' opinion for the Sixth Circuit? It's a post-amendment opinion where he basically buys the argument that the amici makes and says the addition didn't change anything because it comes from under color of office, which is still on the statute. Well, we disagree with that analysis. And I think if you're going to look to the decisions of other circuits, I would look to the Third Circuit's decision in the Henry Commonwealth case, Fourth Circuit's decision in the Sawyer case. Those are the two circuits that have specifically considered whether the 2011 amendments required abandoning the causal nexus test that developed before those amendments. Both of those circuits have held that the or relating to language is expansive and imposes a connection or association test. Coming at the same issue but from a little bit of a different angle, if you're right that the causal text 2011 amendments did change that textual approach, am I correct that the 2011 amendments didn't change the Boyle analysis in the private contractor context? Yes. And that's actually the limiting principle you offer in your reply brief, that there's still Boyle. That is a limiting principle. It's the backstop that Congress had in mind. Now, the or relating to language is not limitless. I mean, the Supreme Court has interpreted similar language in the preemption context and said that something that is too remote, too tenuous, or too peripheral is not going to meet the relating to. But you're right. Last question then factually. If the 2011 amendments don't affect Boyle and we're looking just at this case and Boyle, the district court and the panel both came to a conclusion that that issue wasn't before them. In fact, there was no evidence to support government specifications as to safety. You're correct. Neither did the district court nor the panel reached it. Well, they both said there was no evidence to meet the first element that they'd seen yet. Am I right? I don't believe so because both the district court in a footnote made clear first it wasn't reaching colorable federal defense because it was remanding for failure to meet causal nexus. I don't believe the panel said anything about colorable federal defense. Well, even if there were no evidence, the fact is that Huntington Ingalls pleads or has to be relying on Boyle, and that is the reason you come into federal court to interpret Boyle. That's correct, Your Honor. And I would say, too, there is evidence. There manifestly is evidence. We submitted two affidavits in support of our opposition to the motion to remand, and these are available at document 1213 and document 12-2 of the record. And those affidavits explain that Huntington Ingalls was operating pursuant to federal contractual objectives, that, among other things, federal contracts required compliance with federal safety objectives, including federal safety standards, including standards specifically pertaining to the particulate matter of asbestos and exposure to asbestos. Those affidavits also state that the government had superior knowledge to contractors like Huntington Ingalls or Avondale, as it was at the time, about the risks of asbestos. And for those reasons, it's clear that we have shown that there is at least a colorable federal defense here under this Court's decision in the Zerang case at pages 790 to 92 where the Court walked through the Boyle factors as they pertain to a failure to warrant. Zerang was a strict liability case. Well, it was both. It was failure to warrant and strict liability, and the Court didn't distinguish at all in its federal defense analysis between strict liability and failure to warrant. And that's correct. Other circuits, like the Papp case out of the Third Circuit, the Agent Orange case out of the Second Circuit, have found the federal contractor defense met. And here we're talking about whether we have a colorable federal defense, i.e. a defense that is not immaterial or frivolous. It's a secondary issue. The primary thrust is the causal nexus. Has it been replaced by relatedness? Yes. I picked up on your reply, Breeze, saying this isn't limitless, that Boyle is unaffected, a private contractor would still have to point to government specifications of safety. I read the panel opinion to explicitly say that Avondale had not rebutted the testimony the panel quoted. As the author of the panel opinion, I concede error. Okay. And anyway, we're not bound by what the panel said about the record. We read the record en banc. And I think what the decision said is I understand it. And first and foremost, defer to the author of the panel decision. I'm sorry. And it wasn't just the panel. The district court had just — it's a troublesome bill. I'm wiping the egg off my face, okay? I know that the district court specifically said it was not reaching colorable federal defense. I know that there is evidence in the record. I think what the panel said was that there was not evidence that we were not free to impose additional standards. And, of course, that's tied to the causal nexus standard because under that — Okay. And I want to get to that because we've been talking about the need to construe statutes. And I understand the codification of this statute is in 28 U.S.C. 1442. But that isn't the actual statute that Congress passed. It passed 125 Stat. 545. And in that, it clearly separated clarification of inclusion of certain type of proceedings from conforming amendments. This isn't something where we're going to some Senate chairman talking on the floor looking for legislative history. That's not what we're looking at. We're looking at the statute. And it uses conforming amendments when it talks about relating to. How can you get past the cyan case that says that isn't meant to be some massive change when it's a conforming amendment? Sure. And I'd point the court to a couple considerations. First, I'd point you first to the Burgess v. United States case where Justice Ginsburg said in her opinion for the court that there, they simply were placing too much weight on the use of the phrase conforming amendment. You're quite right. That does appear in the public act. But nevertheless, in the Supreme Court's decision in Burgess, the court said that the use of conforming amendment couldn't bear the weight that the party asked the court to put in it. And that's the same situation here. Second, I would point to the Supreme Court's decision in RLC v. United States where Justice Souter said for the court, a statute is a statute, whatever its label. And that case involved a statute called the Technical Amendments Act. And what the court said there, and it applies equally applicably here, is that the plain meaning of the statute controls. Now, it seems to me that the plain meaning of the act, to pick up on what Judge Haynes is talking about, it's the only thing that was subject to bicameralism in presentment is this public law that we're talking about, the act. The 1442 was not reenacted. It's not positive law. Codifications are not positive law unless Congress specifically makes them so. And so what is positive law is this act that was passed in 2011. And in the same case that you're, I think it may have been a different case, there's also the line that for conforming amendments raises that phrase that Justice Scalia made famous that Congress does not hide elephants in mole holes. Mouse holes? Mouse holes, I think it is. But that was Kagan quoting Justice Scalia, so that wasn't his comment on it. So it seems to me that to adopt your interpretation of 1442, we have to turn a blind eye to what Congress, it seems to me, clearly did, not intended, clearly did by its statute, by the act that it adopted, which is to say we were concerned about this Congresswoman who was getting subpoenaed for testimony. That's the revision. And the relating to was to make sense of that. You have responded to that in part, but I still don't see how you overcome that this is the act that Congress actually voted on. And it says relating to is assisting this effort to make removable the very small part of a case that may deal with the subpoena on somebody. Your Honor, I think first and foremost, this Court's responsibility is to give effect to the meaning of the language that Congress enacted. The meaning of the phrase or relating to I don't think can be seriously disputed as an expansive question. Well, isn't it redundant if you don't, if you give it the meaning? You have for or relating to. I mean the argument's been presented that you don't need both concepts. And it seems to me that when you have that redundancy, looking to the statutory history, where does that phrase come from? Not the legislative history, but the actual statutory history. I don't think. Get you there. I'm sorry. Your Honor, please. Go ahead. I don't think there's any, the Court wouldn't look to the legislative history unless there's ambiguity. Not legislative history. I don't. Statutory history. The statute that Congress itself passed. Not comments. Not reports. What did Congress vote on? And this is what Congress voted on. And we can look through the statute, and I'll point you to the preamble of the public law. And what it says is to amend Title 28, the United States Code, to clarify and improve certain provisions relating to the removal of litigation against federal officers or agencies to federal courts and for other purposes. And our position is perfectly consistent with that. And I think the central question for this Court is here, why would Congress have gone to the trouble of amending the statute to expand the scope of proceedings that could be removed, at least in the context of pre-suit discovery requests, so that federal officers could remove those pre-suit discovery requests, trying to get information about potential lawsuits, and then result in a situation where that lawsuit was then brought and then the federal officers affected by that couldn't remove the lawsuit itself? That makes no sense. All the reasons that Congress was concerned about having these pre-suit discovery proceedings being removed where the federal officer wanted to remove them would apply equally, if not more so, to the actual civil litigation that was brought following the discovery or the like. And that's the real question. If you want to look for elephants that are missing here, that's what's completely missing from the legislative history if anybody wants to read that. It's very clear. And the fact that Congress had a particular purpose in mind when it initiated this and sponsored the legislation doesn't mean several Supreme Court cases have held this, doesn't mean that you wouldn't give full effect to the language that Congress enacted. Mr. Garre? Go ahead. You go ahead. After the 2011 amendments, what work is the word for doing in the statute? I think what the word for does, Judge Duncan, is at first it confirmed that everything that was removable before 2011 is still removable. But relating to is broader, and you know where I'm going with this. It's just now it's superfluous. It is. And or relating to, I mean, or is the disjunctive. Relating to, that makes clear that Congress wanted to expand what was there before. And I don't think any concern about surplusage here. And the Supreme Court in the Lorenzo v. United States recognized this last term in discussing the securities provisions, that just because there's some overlapping elements of the laws or some surplusage doesn't mean you wouldn't give full effect to the law. And I think any surplusage created by or relating to can't mean that you would not give effect to or relating to. I mean, if Congress wanted to do one thing here, it was to expand the scope of federal remover. Isn't it pretty clear that Congress, I mean, because they also amended subsection A-1, or no, it's a D or C that defines proceeding more broadly, civil action or proceeding. They could have just created a separate subsection, could they not? That would have been very easy. But they didn't do that. Absolutely, Judge Jones. That would have been the sensible thing to do. If they had the limited, the very limited purpose, that would have been the thing to do. If they had the limited purpose, it would have been the most straightforward way to do it. We're going to have a separate proceeding for removal of pre-suit discovery. Instead, Congress went about it a quite different way, in which it expanded the scope of removal for any action for or relating to acts under color of federal office. And it made no indication of effect. So this is clear and plain and not an elephant in a mouse hole, but the lawyers in Bartell completely missed it. They did, Your Honor. Even if we think we may, I think we asked about it, and they said, oh, it does nothing in this, and we still have to show causation, but we want to tell you how. My, Your Honor, Judge Elrod, my understanding is that in Bartell it wasn't raised. It wasn't raised, but I think that we may have asked about it at oral argument, but I'm not positive, but I think we did, and they said, no, it has no effect, but we think there's causation here. Right, and bad on them because they should have read the statute, which I think everyone agrees that has to be done here. I would point you to the Zerang case where that issue was front and center and where the court actually agreed that relating to has to be given a broad meaning for a connection to or an association with. In the Lejeune case, the court again recognized the relating to language, and, of course, in this case. So people have wised up to the addition of this language. The Third Circuit in the Henry Commonwealth case, the Fourth Circuit in the Swearer case, I mean, if this court were to retain the causal nexus requirement in the face of the oral relating to language in 2011, it would be creating a circuit conflict because although my friends on the other side point to a number of cases from other circuits that they say continue to apply the causal nexus requirement, none of those cases have squarely addressed. But we wouldn't be creating it because we were first. I mean, we don't recreate a circuit split. I think you would be creating it, Your Honor. It may deepen it, but we wouldn't be creating anything because we already said. It doesn't mean that that's what we're going to say today. I'm not foreshadowing. The court, I mean, why I would think of it as creating it, Your Honor, is that it would be the First Circuit that has been asked to look at this language and has refused to give it its plain meaning. The Third Circuit gave it its plain meaning. The Fourth Circuit gave it its plain meaning. The trend is clearly to give effect to its plain meaning. If this court would be the First Circuit that disagreed with Swearer and Commonwealth on that. So that's why either way, Your Honor, I think the circuit split would exist, and I think that's another reason why the court should abide by the circuits that have given effect to the plain meaning. I did look pretty carefully, and having made a mistake about the factual development of the case, albeit for somewhat different reasons, I did look at the case law from the other circuits that did not speak about relating to and continued to speak about causal nexus, and it appeared to me that most of them had a much more liberal interpretation of causal nexus than this court had developed post-Bartel. And therefore, the distinction between for relating to and for on the one hand and relating to on the other depends partly on how broadly courts had interpreted color of official act before. I think that's exactly right, Judge Jones. I think the circuit as explained in the Blue Cross Blue Shield amicus brief has been much stricter than other circuits in applying a causal nexus requirement, but I think it's critical for this court, if it agrees with our position, to make clear that there no longer is a causal nexus requirement. In Legendre, the court said that there is a nexus requirement, and sure, to the extent that a nexus is a connection and a relationship requires a connection or association, you could say it's a nexus, but I think using the causation language is confusing and is only going to invite more problems that are going to lead this court back into an en bloc situation to give effect to the plain meaning of Congress's intent. And that was to have a standard that is expansive in terms of allowing removal of any civil action for or relating to an act under color of federal office. But even in that situation, we agree, as Judge Higginson pointed out, that the defendant still has to come forward and establish that it has a colorable federal defense. Counsel, let me ask you about Judge Higginbosom's concurrence in Legendre, which he says we ought to start there. The better approach is to begin with what is the basis for removal in the first place? Is it that there's defenses in the case that can be raised? And is it colorable? What's wrong with that approach? Isn't that really more traditional? It seems to me what we've been talking about here, but in the case law more recently, is an awful lot of the merits and not a lot about the jurisdictional issue. Sure. So I think a couple of things. First, I think here in this en banc setting, our understanding is this court granted en banc to consider whether the causal nexus requirement should remain in effect, and we think the court first and foremost should address that issue and hold that it no longer remains in effect, that it's a relating to standard. Second, in terms of the colorable federal defense, we agree that that's an element. I think it's a practical matter that the focus of removal litigation may shift in that direction and to that extent abide with Judge Higginbotham's way of looking at things. And third, I would say is we have no objection to looking to whether or not there was a colorable federal defense here. In fact, we think the most clarification the court could provide is to go further and say that there is a colorable federal defense. Under this court's analysis in Zerang, again at pages 790 to 92, it's clear that there's at least a colorable federal defense here. The asbestos at issue was installed pursuant to a federal contractual directive on a naval vessel. This action clearly relates to that. We carried out those specifications. We've made clear allegations on that. We've also made clear, and there's factual support in the record for this, in the Joyce and Herfel affidavits I mentioned to you earlier, that the federal government had greater knowledge than the defendant about the risk of asbestos. We complied with federal safety objectives, which actually had requirements for the particular matter of asbestos and the like that people could be exposed to. And for all those reasons, we at the very least have a colorable federal defense. That doesn't mean that we'll win on that defense, but it means that we're entitled to proceed in federal court on that defense. Judge Costa, in his opinion in the Savoy case, spoke about the fundamental reasons that we have a removal statute. We do so because of the risk of prejudice in state courts, and we do so to ensure that when there are federal interests and there's a colorable federal defense, a defendant can ask for a federal court to resolve that defense. This is a case that falls within the heartland of the removal statute. It should be in federal court. The plaintiff will have his day in court. It just should be in a federal court. If there are no further questions, I'll reserve my time. All right. Thank you, sir. You have reserved your rebuttal. Mr. Flanagan, we'll hear from you. It's my understanding that you're exercising the uninterrupted portion before taking questions. Is that correct? Yes, Your Honor. All right. You're on. Chief Judge Stewart, and may it please the Court, this case presents an important question of statutory interpretation, one that implicates the relationship between the state courts and the federal courts. Did the Removal Clarification Act overturn 85 years of Supreme Court jurisprudence and eliminate the causal nexus test in claims against private contractors? More specifically, did Congress do so through three words in a conforming amendment? The answer to these questions is a resounding no, but the questions are complex, and they require more than a single tool in the statutory interpretation toolbox. Now, as we've just heard, Avondale disagrees, and it seems to suggest that the words are relating to tell us just about all we need to know. And according to that argument, those words are broader than the words that had led to the causal nexus test. And for that reason, a relationship, a connection, direct or indirect, would suffice for a case to be removed to federal court. That argument is wrong. In the words of Justice Scalia, it's a context-free approach that loses sight of the forest for the trees. And in my time this morning, I want to talk about the forest, and as some of you have already mentioned, also about elephants and mice and all of the reasons why Avondale's interpretation should be rejected. And the first reason is that Avondale overlooks how the Supreme Court has interpreted this very statute. In Watson v. Philip Morris in 2007, a unanimous opinion dealing with two other words that were broad, acting under. And the court said, though those words are broad, even broad language finds limits in the language, context, history, and purposes of the act. And I think that's the context, that's the forest I want to talk about. And in particular, if we look at the Supreme Court's cases over the years, and this has been a constant, they almost always take us on a history lesson back to the War of 1812 because history is important in this statute. And I believe that's what Avondale overlooks. They overlook decades of jurisprudence from Soper to Mesa to Acker telling us that a causal nexus is an essential requirement of every federal officer removal. And someone mentioned, Judge Haynes mentioned the Scion case, a unanimous opinion from last year at the Supreme Court, where at issue was 65 years of jurisprudence under the Securities Act. And the question was, did an amendment to that statute implicitly reject 65 years of jurisprudence? And the Supreme Court said, no, we have to look at the context. I believe Avondale downplays the significance of Congress' decision to preserve the word for. The word has been the basis of the causal nexus test for decades, and Congress made a specific decision to keep it. Yet under Avondale's view, that word is a meaningless remnant. It has no effect. A causal connection is a mere subset of a broader relationship in direct connection. It will never have a role. But Congress said otherwise. Congress' decision to keep the word for in the statute is consistent with the title of the act's substantive provision, clarification of inclusion of certain types of proceedings. That's what this act was all about. Avondale gives short shrift that the words, or relating to, were in a conforming amendment. And again, Sion, unanimous opinion, said conforming amendments are for minor tweaks. When considered against decades of jurisprudence, requiring a causal nexus as a condition for removal, that these words appear in a conforming amendment should give us caution before presuming that Congress intended to fundamentally change the law. And we've heard the mousehole's canon. And yet this is an elephant. The effect is undeniable. The panel told us Avondale's interpretation would result in removal of many more cases than the causal nexus test permits. Avondale overlooks that the words relating to, while broad in the preemption context, are limited elsewhere. And I refer the court to the Mullooly case from 2015. An issue was whether a statute that allowed the removal of aliens convicted of crimes related to certain federal drug offenses could be removed from the country. The defendant in that case, Mr. Mullooly, was convicted of a drug paraphernalia charge, and the question arose, well, was that charge related to these federally prescribed drugs? And the Supreme Court said, no, we have to put limits on words like relating to that, taken to the furthest stretch of their indeterminacy, really stop nowhere. And the court put a limit on those words, and so, too, did this court in Zerang. And Zerang reaffirmed Bartel and said, even considering these words relating to, and considering that they would broaden the statute, they cannot extend to the point of private conduct. Negligent discretionary conduct by a private contractor is private conduct that goes beyond the federal interest. That's what this court said in Zerang, and that's correct. And finally, I think that Avondale glosses over the very trigger of the Clarification Act. And in a real sense, the act began at 600 Camp Street in New Orleans, in a case called Price v. Johnson, decided March 11 of 2010, where the Johnson in Price v. Johnson was a Dallas area congresswoman. And she tried to remove a Rule 202 proceeding and was told by the district court that that was not a civil action. She couldn't remove it. It was remanded. And she appealed to this court, and this court, applying settled law at the time, found that it had no jurisdiction. And Ms. Johnson didn't have to write to her congresswoman because she was her congresswoman. And within two months, within two months, the Clarification Act of 2010, the precursor to this bill, was enrolled in Congress. And so, judges, the idea that Congress repudiated decades of Supreme Court jurisprudence by indicating— That argument— He's still, he's still on the run. Judge, I welcome your question. Oh, nope. Unless you expressly waive it all, you're still under uninterrupted time. Just hold your powder just a moment. And so, the suggestion that the Clarification Act repudiated decades of jurisprudence by implication, with three words in a conforming amendment I submit is simply implausible. A change of this magnitude is an elephant, not a mouse. It would have attracted more attention. Only four no votes in both houses of Congress. Again, it took years for Avondale to devise the argument that it makes today. And in fact, if such a momentous change really occurred in 2011, one might reasonably ask, why did the Ninth Circuit just last Friday, in a case called Riggs v. Airbus Helicopters, outline the elements of federal officer removal as including a causal nexus test? Now, I don't suggest that that was essential to the holding of Riggs. But here we are, eight years later, and still courts don't understand this statute to have fundamentally changed the law. Talk about a mouse. Considering the entirety of the Clarification Act and all of the tools and canons of statutory interpretation, the court should find that Congress did not discard the causal nexus test. To state it differently, Congress did not authorize the removal of state law torsuit suits alleging private discretionary conduct by public contractors. As the panel recognized, and maybe not for long, and legend before it, the evidence in these cases is the same. We're dealing with things that happened in the 60s and sometimes the 1970s. So the depositions are the same. The affidavits are the same. The evidence shows Avondale ran its own safety department free of Navy interference. There was no conflict between Avondale's responsibilities to refurbish a ship and its state law obligations of reasonable care. That is a stark difference with strict liability cases where the mere use of asbestos was the basis for the claim. This state law case belongs in state court. Removal was improper, and this court should affirm. At this point, I welcome your questions. All right. He's on. Okay. Can I go now? Okay. Fire away. And I apologize for interrupting your uninterrupted time. Going back to your point about Congresswoman Johnson and the votes of Congress and all that, that is legislative history versus looking at the language conforming amendment, which is statutory history. Your Honor, I would submit that the trigger for a statute is probably allowed. It's one of many considerations. And, again, looking back at cases like Soper and Acker and Mesa, they typically do look to what was happening at the time a law was passed. For example, prohibition, another one, tariffs during the War of 1812 being very unpopular. And so I would submit that the triggering event is something this court can look to. It's not necessary to dive deep into legislative history necessarily or things of that kind. But I think acknowledging what this case was triggered by is fair and is part of the context that Justice Scalia talked about. Counsel, even if we accept, for purposes of this question, let's say that the point is accepted, your analysis of this 2011 amendment, where are you if, on the question I also asked your friend on the other side, on the colorable federal defense, if that is in fact the right place to start on whether a case should be removable under this section? Where are you? Well, Your Honor, we think that the tradition has been to address these elements. And, really, we see more often the federal defense coming last. But they're all necessary and they're all essential. And so I don't know that I would see any fundamental difference in reordering them. So it's like many claims that if you're missing one element, there's not going to be any removal on this case. Well, there is colorable then. So just looking at it from terms of starting with, as Judge Higginbotham urged, and his reasoning has some appeal to me, if we start there, for you to succeed, don't we have to move beyond there? Don't you lose at the colorable federal defense side? Well, if there is a colorable federal defense which we dispute in a question that hasn't been decided, Avondale still has to prove all the other elements, including we contend the causal nexus. And as to the question . . . To remove it, necessarily. I'm sorry? To win their case, but not necessarily to remove it. Well, we would submit that in order to remove this case to federal court, they're going to have to show that they are a person acting under an official, that there's a causal nexus, and that there is a colorable federal defense, that they need to prove all of it. And so if they fail on any one, and, again, this Boyle issue hasn't been litigated yet in this case, not decided by the district court or the panel. But I want to speak to that briefly. Judge Higginbotham's point is if you start with the federal defense, which, after all, that's the constitutional book. The only reason there's Article III jurisdiction is if there's a federal issue in the case. If you start with that and the answer is yes, there is a colorable federal defense, then what he's saying, I think, is that why worry about causation because it proves the causation or whatever the causal requirement is because you wouldn't have a colorable federal defense if there's no connection to being a federal contractor. And, Your Honor, I suppose that could happen in some cases, but it's not necessarily so that the federal defense is linked to the means of the suit. There's got to be a federal defense. Sometimes it's preemption. Sometimes it's that a statute in question has no federal private cause of action. Would you agree, at least in the federal contractor defense, the Boyle situation, you wouldn't have that colorable defense if there wasn't a sufficient relationship with doing the work for the government? I would, Your Honor. I think there's a lot of overlap in this particular context, and so I want to speak to that briefly. Though it's not been litigated yet, Boyle and this idea summed up, I think, neatly by the opinion, the government made me do it. And if we look at a case like Legend and we look at the other cases involving Avondale, and you've had a number of unpublished opinions as well, it is plain that the government didn't make them do it. But, Mr. Flanagan, isn't that really sort of inconsistent with the other circuit's law? I mean, if you're moving back to the causal nexus, the government made me do it may have been the Fifth Circuit law, which was part of what drove the panel opinion in this case, but that is not the way the other circuits have interpreted under color of official act. Well, Your Honor, speaking of the other circuits, and opposing counsel mentioned Sawyer and Papp. No, I'm not talking about those because those agree with what all relating to means. I mean, the Seventh Circuit and the Sixth Circuit and the Eighth Circuit, they are much broader in interpreting the scope of a colorable federal defense and, therefore, causal nexus. They don't split, for the most part. They don't create this strict dichotomy that our case laws develop between strict liability and negligence claims. I understand the question now, Your Honor. Thank you. And you agree with me, right? I would acknowledge that some other courts have taken a more casual, looser interpretation, but I think they're wrong. And I think they're wrong— And that runs right in the face of Willingham, doesn't it? And also Jefferson v. Acker. Jefferson was a state tax case that Justice Ginsburg said was removable under this statute, right? Well, a few things, Your Honor. On Acker, going in reverse order, Acker was a case involving an occupational license tax that, according to the federal judge plaintiffs in that case, really made payment of a tax a condition of performing their occupation in Alabama. And so Justice Ginsburg, running for the majority, said, interpreting that in the way that the judges construe it—and that's what the act said. It was an ordinance, rather. That if they didn't pay the tax, they could be prohibited from serving as a federal judge. And so there was then a sufficient causal nexus in that case. I would also look to Justice Scalia's dissent in Acker. Now, he didn't squarely meet Justice Ginsburg on the merits, but reviewing the history, Justice Scalia said, We have never said that a mere but-for connection is enough. And, in fact, if it were, the defendants in Sulper would have been tried in federal court and not remanded back to state court. But but-for is a lot different from the government made me do it. Well, speaking back to the question, then, of Boyle defense. The government made me do it. In other words, there was a conflict between the federal responsibilities and the state law duties. The opinion gives us the perfect example. The government wants to buy an air conditioning unit, and it prescribes a certain cooling capacity. But it says nothing about certain safety standards that state law may apply. Does this turn on our law about plausibility and colorability? Because when they do say that the government did make them do it, they do point to that Danny Joyce affidavit. Well, Your Honor. And what's your thought about that? My thought is they've lost every time they've made that argument. But you know the affidavit, right? Would that meet the plausibility test? No, Your Honor, because I think it was a general statement. And what it was is we were under government control, and there were Navy inspectors. But what they never said was the Navy controlled our safety department. The Navy told us we couldn't warn. The Navy told us we couldn't use ventilators or isolate asbestos dusty work in a particular place. In contrast to cases like Sawyer and Papp, that even though they turn out the way that Avondale likes, in those cases, the court gets deep into the weeds. They're not applying some loose test whereby any relationship will do. They roll up their sleeves, look at the evidence, and say, in each of those cases, the government controlled the content of the warnings. Government control. That would satisfy Bartel, Legendre, and Zerang. So while there's a difference in terminology, those cases certainly don't support the hands-off approach, and again, just as in Soper. Those prohibition agents never would have been in rural Maryland chasing down the bootleggers if they had not been dispatched there. And that's what certainly was a link in the chain in the murder charge, the obstruction of justice charge, and yet it wasn't enough. They were sent back to state court because but-for causation has never worked. I would like to talk about the statute, if I can, briefly, and there have been some questions about that. As has been noted, the statute is Public Law 112-51. It's Addendum A to our brief. And there are eight points about this statute that reinforce that Congress was not upending 85 years of Supreme Court jurisprudence by this narrow act. And the first is its title, the Removal Clarification Act of 2011. Now, certainly rejecting Supreme Court jurisprudence to 1926 would not, in anyone's fair definition, be a clarification. That would be a pretty fundamental change. Subsection 2A is entitled Clarification of Inclusion of Certain Types of Proceedings. Another change. Before, the case had to be against the defendant. But in a matter like Representative Johnson, who got a pre-suit deposition request, or another person, we might imagine, who got a subpoena, the suit isn't necessarily against them. So against became against or directed to, again, to take account of these ancillary proceedings. The terms civil action and criminal action were redefined to include any proceedings in which an order is sought, whether it's a subpoena, document request. In the Commonwealth case out of the Third Circuit that was quoted, that's an ancillary proceeding case, allowed by this 2011 amendment. Now, if removal is sought on the basis of this ancillary proceeding, only that part of the case goes to federal court. Again, treating these ancillary proceedings separately. In the conforming amendments, and one might pause and ask, why did Congress bother to say, these are conforming amendments, and to differentiate the substantive provisions from the conforming amendments? We can't presume they did that for no reason. That has information, that's important information Congress is telling us. And in the conforming amendments, the word for is actually taken out and then put right back in. And for or relating to. So Congress made a deliberate decision to keep the word for, and then they struck the word sued. You don't have to be sued anymore. Again, Representative Johnson wasn't necessarily sued. If a member of a federal agency gets a subpoena, they've not been sued. These are indications, as we look at this statute textually, and again, we cannot assume that Congress meant the conforming amendments to have no meaning. Preserving the word for to have no meaning. And if I can, I'll just go back and talk a little bit about the pre-existing law. And I've mentioned SOPR, and it goes to Acker, and it goes to, Your Honor, I'm reminded of your question about Willingham, and I want to respond to that. This court has never followed Willingham in the public contractor cases, probably because that's an employer-employee case. And the question was whether these employees of the federal government were on the payroll, the court even uses the term, or whether they were on a frolic of their own. The other thing I think is important to note about Willingham is the court was pretty open about saying it didn't really know what to make of the complaint. It called it a scattergun complaint with all manner of undated allegations. Well, maybe the mistake is on our part, because Willingham describes the intended breadth of the federal officer removal statute with capaciousness. Well, Your Honor, then it would be inconsistent with SOPR, which again, it continues to be cited today. Because in SOPR, if a connection is enough, it truly was capacious. Well, those prohibition agents in Maryland, they would have been tried then in federal court. There are separate federalism reasons for not removing a criminal case, aren't there? That is certainly a consideration. That is, Your Honor. But I would submit that Acker certainly didn't say, but for causation is now enough, that we were incorrect. And Justice Scalia, who again said, but for causation has never been enough, the majority didn't disagree with him on that point. It was a matter of application in Acker. Cyan, I think, is another important case. And frankly, if there was one thing I could tell you, that what is one of the most important considerations in reviewing the statute is that it is an amendment. And that so much had come before it. If you were interpreting a new law dealing with a new problem, that would be one thing. And you might have different tools at your disposal. But Cyan tells us, again, in the 9-0 decision, interpreting the Securities Act, where the case is so much like this one, the words that purported to overturn 65 years of jurisprudence were in a conforming amendment as well. So you're saying text includes context? Absolutely. And in fact, I think that in his book, Reading Law, Justice Scalia talks about a fair reading textualism. And in an interesting note says that if someone ever calls you a strict constructionist, you should be insulted, because that's a pejorative term. Well, let me just say, though, you know, you just have to start with the language of the statute, right? And if I were a Martian coming down and looking at this law and it says, for, relating to, I would say, hmm, that's pretty broad, wouldn't I? I wouldn't say it means I have to show the government made me do it. We are in terms of the government made me do it being the Boyle defense and not necessarily based on the statute. But I would suggest, as I said at the beginning, this is a complicated case. But it is certainly not a case where one can say, divorced of context, the words relating to are broad, because that gives no effect to for. It gives no effect to the conforming amendment. And it would presume that the Supreme Court 9-0 was incorrect in science. Somebody could have said at issue there was this except clause, that there was concurrent jurisdiction except as provided in a different section. In a battle between statutory text and a statutory header, what prevails? I'm sorry, the last one? In a battle between statutory text and a statutory header, what prevails? I would say in that battle, Your Honor, the text would prevail. But when we have conflicting indications from the various tests, and I'm reminded of Yates v. United States decided not too long ago, where the question was, is a fish a tangible object? And of course it is. Of course a fish is a tangible object. You can see it, smell it. But Justice Alito, in his concurring opinion, which made it a 5-4, specifically said, given the conflicting indications here, I'm going to look at the title of this law. And the title can be a tiebreaker. And I would submit that if Your Honor has any doubt about what is meant by preserving floor in the history, the title can be that tiebreaker. My time has expired. I thank you all very much. All right. Thank you. Go ahead again. All right. Rebuttal, sir. Thank you, Your Honors. First, although everyone agrees that this Court should look to the public law that enacted these provisions, the Court also has to make sense of Section 442A1 as amended, because that's what courts would be applying in determining whether or not something is removable. And reading that law as it exists today, there is no basis to include that only some actions or parts of actions are subject to the or relating to requirement, and others aren't. And this goes back, if you want to get into this enterprise of trying to think of what was in Congress's or a specific legislator's mind. The real question is why would Congress have gone out of the way, its way, to make sure that Representative Johnson could remove the pre-suit discovery request to federal court, but then when the actual action was brought, she'd be stuck in state court because on that issue, 4 applied and or relating to is relevant. They have no answer to that. Mr. Garr, doesn't Subsection D sort of foresee the severability of those two kinds of actions when it comes to removability? I think what it does, Your Honor, is that, first of all, it indicates where Congress specifically wanted to address ancillary proceedings. It did so separately. What it deals with is a separate situation where you have two private parties, none of whom could argue that there's an act under color of federal office, and there's a pre-suit discovery request, say, to a federal officer on removal. And it makes clear that even though the action itself couldn't be removable, the discovery could be removable. But in 1442A1, we're dealing with a case like this where both the action and any discovery would be removable. So their interpretation makes no sense when you look at 1442A1. On the question of mouse holes in elephants, first what I would say is there's no indication in any evidence from the Third Circuit or the Fourth Circuit who have adopted our position that there has been any sort of flood in cases going into federal court. So the premise that this is an elephant, I think, is mistaken. Secondly, I would point to the Court's decision in Willingham, if you want to look at prior Supreme Court precedent. On pages 402 to 403, the Court said, at the very least, the statute is broad enough to cover all cases where federal officers can raise a colorable federal defense. Our position is perfectly consistent with that. Third— It's also not a mouse hole. It's not a mouse hole either. It's about subtle, cryptic interpretation. Right. I mean, everybody— No, you're exactly right, Judge Hogue. Everybody agrees that Congress is expanding the statute. And I agree that it's not a mouse hole. Third, since Justice Scalia's name has been brought up many times, and I think it would be fair to say, in our view, that he's rolling, if not jumping around in his grave, I'd like to make three points. One, Justice Scalia made emphatically clear that it's the meaning of the language that Congress adopts, not any sort of enterprise ascertaining the intent of any handful of legislators who've created legislative history that controls. Two, on the issues of titles or heading, Justice Scalia said in his book, Reading Law, which my friend pointed to at page 222, quote, titles or headings should never be allowed to overrule the plain words of the text. So if you want to know what Justice Scalia thinks about that, he said it explicitly in his book on page 222. And third, he would never get into the enterprise of looking at the legislative history or the intent— But this is more than a title of a section. This is a type of amendment. Doesn't that make a difference? I don't think so. I mean, as I read the public law, B, it's a title. It says conforming amendment. But it's a type of amendment. A conforming amendment, this isn't the title of the section. The title of the section isn't conforming amendment. It's the title of the kind of amendment they were making, which is a little bit different. Your Honor, it's in the heading. It's a heading. And I think Justice Scalia's rule would apply. And I think on the question of Sion, again, we'd point you back to the Burgess case where the Court made clear that there's only so much weight that you could put on the notion of— But if Sion and Burgess are in conflict, wouldn't we rely on a more recent opinion? I don't think so because I think both ultimately are looking at the legislation and whatnot. And I think what Burgess shows is that the use of conforming amendment language can't be controlling. And that makes, I think, sense. And here, it is a conforming amendment. Congress was expanding 1442A. And when you look at 1442A-1, that's clearly what it did. The question is, did Congress somehow mean not to give effect to the plain language, plain meaning of the language that it adopted? And I don't think my friend has come up with a persuasive answer on the text of the statute. The last thing I would say with respect to the colorable federal defense, I would urge the Court to read the Joyce and Herfel affidavits, which our friends on the other side have not contradicted. They're quite wrong in saying that the colorable federal defense is a the-government-may-me-do-it defense, and the court's Zerang decision establishes that. And finally, they're wrong that district courts have uniformly rejected this defense. And I would point the Court to two recent decisions, Rivera v. Huntington, 2018 Westlaw 4579826, and Bondurant v. 3M Company, 2019 Westlaw 3214288, which have recognized that there is at least a colorable federal defense in analogous circumstances. Just one question. How many cases has Huntington Ingalls faced with this question about asbestos being used in removal? Your Honor, I don't have an exact answer to you. I mean, as you can... I think it's evident from the Court's own case law, there are a number of them. There are several of them. But in terms of those that would be going forward, I don't have an exact number. What I can say is I am confident that it's something that the federal courts would be able to adjudicate, and that ultimately it was Congress's intention that those cases would be removal to this Court under the plain terms of its statute. Thank you, Your Honor. All right. Thank you, sir. That completes the argument in this case. Thank you, counsel, on both sides for the briefing.